**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **RAMON RODRIGUEZ** | : | **NO. 23-250** |
| | : | **U.S.C.A. Number:** 24-2936 |

**OPINION**

**Perez, J**                                                                                                     **November 14, 2024**

On June 6, 2023, Defendant Ramon Rodriguez was charged by indictment with unlawful possession of a firearm as a previously convicted felon. Mr. Rodriguez moved to dismiss the one-count indictment brought under 18 U.S.C. § 922(g)(1), arguing that the statute is unconstitutional on its face and as applied to him individually. On January 16, 2024, this Court denied his motion. *See* ECF No. 32. On October 9, 2024, Mr. Rodriguez pled guilty and this Court sentenced him to 50 months incarceration plus three years of supervised release. It is from that judgment of conviction and sentence that Defendant now appeals. This supplemental opinion will address the Court's analysis regarding application of the *Bruen*/*Range* framework to Mr. Rodriguez's case.

I.    **FACTUAL BACKGROUND**

On February 24, 2023, Mr. Rodriguez was arrested by the Philadelphia Police Department for unlawful possession of a firearm. Prior to his arrest, he had been convicted of five felonies across three criminal cases. In two separate cases, one in 2013 and again in 2014, he pled guilty to Possession With Intent to Distribute Marijuana, in violation of 35 Pa. Cons. Stat. § 780-113(a)(30). Having been convicted of those drug felonies, he was subsequently found guilty in Berks County in 2022, following a bench trial, of Possession of a Firearm by a Prohibited Person, in violation of

18 Pa. Cons. Stat. § 6105(a)(1), Firearms not to be Carried Without a License, in violation of 18 Pa. Cons. Stat. § 6106(a)(1), and Receiving Stolen Property, in violation of 18 Pa. Cons. Stat. § 3925(a). Prior to sentencing on that case, Mr. Rodriguez failed to appear for court and a bench warrant was issued. The warrant was still active when he was arrested on the instant gun charge.

## II. DEFENDANT'S ARGUMENT

Mr. Rodriguez sought to dismiss the sole count in the indictment charging him with unlawfully possessing a firearm as a convicted offender. He argued that 18 U.S.C. § 922(g)(1), which prohibits people with convictions punishable by more than one year of imprisonment from possessing guns, is unconstitutional under the Second Amendment, both on its face and as applied to him individually. Defendant sought dismissal following the United States Supreme Court ruling in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and the Third Circuit's recent en banc decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023).

Using the two-step framework for as-applied challenges articulated in *Range*, Mr. Rodriguez asserts that: (1) the plain text of the Second Amendment presumptively protects him as a member of "the people," and (2) the Government cannot demonstrate that the application of § 922(g)(1) to him is "consistent with this nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 26; *see also* ECF No. 15. Mr. Rodriguez further argues that even if this Court were to reject his as-applied challenge, § 922(g)(1) is facially unconstitutional because: (1) there is no founding-era history of felon disarmament; (2) the statute is unconstitutionally vague; and (3) the statute is inconsistent with the original public meaning of the Commerce Clause. ECF No. 15 at 1-3. Mr. Rodriguez concedes that his third argument is foreclosed by precedent, and thus this Court will not address it further. *Id.* at 3.

### III.    STANDARD OF REVIEW

Under Federal Rule of Criminal Procedure 12(b)(1), a party may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R Crim. P. 12(b)(1). In cases involving an as-applied challenge to a criminal indictment, the Court must determine whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's specific conduct. *Spence v. Washington*, 418 U.S. 405, 414 (1974). Conversely, successful facial challenges require that a law be struck down in its entirety because it "could never be applied in a valid manner." *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984). The high burden for facial invalidation requires the challenger to establish that "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

### IV.    LEGAL FRAMEWORK FOR SECOND AMENDMENT CHALLENGES

The Second Amendment provides that: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. In *District of Columbia v. Heller,* 554 U.S. 570 (2008), the Supreme Court determined "that the Second Amendment conferred an individual right to keep and bear arms" unconnected to militia service. *Id.* at 595. However, the Court emphasized that "the right was not unlimited, just as the First Amendment's right of free speech was not" and, therefore, it did "not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*." *Id.* (emphasis in original).

The Supreme Court has repeatedly stated that its Second Amendment jurisprudence does not disturb presumptively lawful gun regulations like felon disarmament. *Heller*, which announced the right to keep firearms in the home for self-defense, made clear that "nothing in our opinion

should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons." *Id.* at 626. *McDonald v. City of Chicago* reiterated that, like all constitutional rights, the right to bear arms is not unlimited:

> It is important to keep in mind that *Heller*, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to keep and bear arms is not "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." We repeat those assurances here.

561 U.S. 742 at 786 (2010) (quoting *Heller*, 554 U.S. 570 at 626-27 (internal citations omitted)).

*New York State Rifle & Pistol Association, Inc. v. Bruen* set forth a history-based framework for determining whether a firearm regulation is constitutional under the Second Amendment. 142 U.S. at 19. Rejecting the use of means-end scrutiny in gun regulation cases,[1] *Bruen* introduced a two-prong test for courts to apply. The first prong asks whether "the Second Amendment's plain text covers an individual's conduct." *Id.* at 2126. The second prong requires the government to affirmatively demonstrate that "the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126-27.

As to the second prong, the Second Amendment "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 29. Thus, when confronted with regulations "that were unimaginable at the founding," courts must reason "by analogy," which "requires a determination of whether the two regulations are relevantly

---

[1] Prior to *Bruen,* appellate courts, including the Third Circuit, largely agreed on a two-part analysis of firearm regulations, evaluating whether the challenged regulation fell under the historical scope of gun rights, and if it did, subjecting it to means-end scrutiny. *See, e.g., United States v. Marzzarella,* 614 F.3d 85, 89, 96-97 (3d Cir. 2010).

similar" using "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33. The Court explained that the question is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133.

In *Range v. Attorney General*, the Third Circuit considered an as-applied challenge to 18 U.S.C. § 922(g)(1). 69 F.4th 96 (3d Cir. 2023) (en banc). Bryan Range sought a declaratory judgment that the felon-in-possession statute was unconstitutional as applied to him and requested injunctive relief. *Id.* In a "narrow" decision, the Court held that the application of the statute to Mr. Range, whose only criminal conviction was for welfare fraud decades prior, violated his rights under the Second Amendment. *Id.* at 106, 98.

In 1995, Mr. Range pled guilty to one misdemeanor count of making false statements to obtain food stamp assistance in violation of 62 Pa. Stat. Ann. § 481(a). *Id.* at 98. He was sentenced to three years of probation, which he completed without any violations of his supervision. In the decades since this conviction, Mr. Range's only other infractions were for minor traffic tickets and a summary offense for fishing without a license. *Id.* Because Mr. Range's food stamp conviction carried a possible penalty of up to five years in prison, he is classified under federal law as a person prohibited from possessing a gun. 18 U.S.C. 922(g)(1). Unlike the Defendant in the present case, Mr. Range was never actually charged with a criminal violation of the statute. Instead, he brought a civil suit after being twice rejected from purchasing a firearm by Pennsylvania's instant background check.

Applying *Bruen* to Mr. Range's ineligibility to possess a firearm pursuant to § 922(g)(1), the Third Circuit first assessed whether the "Second Amendment applies to a person and his proposed conduct," finding that the conclusion will almost always be yes, even when a challenger

has a lengthy criminal record. *Range* at 101-103. Relying on *Heller,* the majority held that Mr. Range was indeed one of "the people" as the constitutional text refers to all Americans and not only law-abiding persons. *Id.* at 101. The Third Circuit agreed with a statement of then-Judge Barrett that "all people have the right to keep and bear arms," though the legislature may constitutionally "strip certain groups of that right." *Id.* at 102 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting)).

Having determined that the Second Amendment applied to Mr. Range and his proposed conduct, the Court next turned to whether § 922(g)(1)'s permanent disarmament, as applied to Mr. Range, was "consistent with the Nation's historical tradition of firearm regulation." *Id.* at 103 (citing *Bruen,* 597 U.S. at 24). The government bears the burden of proof to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 101 (citing *Bruen* at 2127). To satisfy this burden, the government must point to "historical analogues" establishing that founding-era governments disarmed people sufficiently similar to the individual contesting the regulation. *Id.* The Third Circuit found that Mr. Range and "his individual circumstances" did not justify stripping him of his right to bear arms because the government failed to meet its burden of establishing that disarming people "like Range" fits within our Nation's history of disarming those who pose a threat to the orderly functioning of society. *Range*, 69 F.4th at 105.

V. **SECTION 922(g)(1) IS CONSTITUTIONAL AS APPLIED TO MR. RODRIGUEZ**

The Court now turns to the question of whether 18 U.S.C. § 922(g)(1) withstands an as-applied challenge by someone who has been convicted of felony drug distribution and prior firearm violations. Mr. Rodriguez was charged by indictment with violating 18 U.S.C. § 922(g)(1), which prohibits any person "who has been convicted in any court of, a crime punishable by imprisonment

for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

> 1. *Whether the Text of the Second Amendment Applies to Mr. Rodriguez and His Conduct*

This Court begins with the threshold question of whether the text of the Second Amendment applies to the Defendant and his conduct. Under *Range* and as agreed on by the parties in this case, Mr. Rodriguez is considered one of "the people" afforded Second Amendment protection. ECF No. 17 at 9. The Government argues, however, that Mr. Rodriguez's *conduct* is not protected under the Second Amendment because he did not possess a firearm for any lawful purpose. This Court need not determine whether the Second Amendment covers Mr. Rodriguez's conduct because the Government has met its burden to show that § 922(g)(1), as applied to Mr. Rodriguez, is consistent with the historical tradition delineating the outer bounds of the right to keep and bear arms.

> 2. *Whether 18 U.S.C. § 922(g)(1), as Applied to Mr. Rodriguez, is Consistent with the Nation's Historical Tradition of Firearm Regulation*

The Government carries the burden to affirmatively show that § 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. The "central considerations" in deciding whether a modern regulation is "relevantly similar" to a historical analogue are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2132–33; *see also Range*, 69 F.4th at 103. This Court is satisfied that, in contrast to *Range*, the Government here has met its burden to show that prohibiting someone with prior recent drug trafficking and gun convictions is consistent with America's historical tradition of firearm regulation.

As the Supreme Court noted in *Bruen*, if individuals were "reasonably accused of intending to injure another or breach the peace," they could be subject to firearm restrictions that did not apply to others. *Bruen*, 597 U.S. at 57. Prior to and following ratification of the Second Amendment, gun regulations disarmed people who "posed a potential danger." *Range*, 69 F.4th 96 at 109–10 (Porter, J., concurring). Importantly, the *Range* majority did not reject the historical record presented by the government, it merely found the record inapplicable to somebody like Mr. Range, whose disarmament was based on one decades old, non-violent conviction.

Moreover, the Supreme Court made clear that in cases where there is no direct historical analogue, "the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." *Bruen*, 597 U.S. at 30. The Government cannot point to a historical precursor that exactly mirrors § 922(g), but the felon-disarmament statute is sufficiently analogous to pass constitutional muster. When analyzing gun regulations that were "unimaginable at the founding," courts must analogize by following "at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-33. The Government argues: "[t]here is clear historical support for restricting the possession of firearms by persons who, like the defendant, previously committed dangerous felonies." ECF No. 15 at 11.

Citing to historical analogues from the 17th, 18th, and 19th centuries establishing that the Nation has regularly restricted firearm access to those thought to be dangerous, the Government has carried its burden in this case. *Id.* at 16-19.[2] In the mid-19th century, many States enacted laws requiring "those threatening to do harm" to "post bond before carrying weapons in public." *Bruen*,

---

[2] The Government cites to: Act of May 1, 1776, ch. 21, § 1, 1776 Mass. Acts 479; Act of June 13, 1777, ch. 21, § 4, 1777 Pa. Laws 63; Act of May 28, 1777, ch. 3 (Va.), reprinted in 9 William Waller Hening, The Statutes at Large; Being a Collection of all the Laws of Virginia from the First Session of the Legislature, in the Year 1619, at 281-83 (1821); Act for Constituting a Council of Safety, ch. 40, § 20, 1777 N.J. Laws 90; Act for the Punishing of Criminal Offenders, 1692 Mass. Laws 11-12; Act for the Punishing Criminal Offenders, 1696-1701 N.H. Laws 15.

597 U.S. at 55.[3] As the Supreme Court noted in *Bruen*, if individuals were "reasonably accused of intending to injure another or breach the peace," the government can impose restrictions on them that others would not be subject to. *Id.* at 57.

3. *Range is Distinguishable*

Mr. Rodriguez's criminal history differs substantially from Mr. Range, whose only predicate conviction stemmed from an inaccurate accounting of household income on a food stamp application over 25 years ago. Mr. Rodriguez's record is more robust, more recent, and unquestionably more concerning. Unlike Mr. Range's non-violent fraud offense, Mr. Rodriguez's prior convictions fall within the sweep of appropriate historical gun regulation analogues.

As set forth above, Mr. Rodriguez has been convicted of two felony drug delivery crimes, which rendered him ineligible to possess a firearm. He was subsequently convicted of felony gun possession offenses and had been awaiting sentencing when he was arrested again in the instant case for illegally carrying a gun.

*Range* was a narrow decision that does not upset the long-standing prohibition of drug traffickers and other dangerous, non-law-abiding people from possessing firearms. Though the Government's presentation of historical analogues was not enough to justify the restriction of Mr. Range's Second Amendment rights, there is strong historical support for the disarmament of people who pose a danger to society. If we use the early American laws cited by the Government as rough historical analogues, the question of "how and why the regulations burden a law-abiding citizen's right to armed self-defense" leads to the conclusion that these laws are relevantly similar to a law that prohibits drug traffickers or habitual unlawful gun possessors from possessing firearms in the future. *Bruen*, 597 U.S. at 29. While the founding generation could hardly have

---

[3] *See, e.g.*, Mass. Rev. Stat. ch. 134, § 16, 750 (1836); Me. Rev. Stat. ch. 169, § 16, 709 (1840); Mich. Rev. Stat. ch. 162, § 16, 162 (1846).

imagined the intolerable levels of gun violence our Nation is presently facing, they too determined that disarmament of certain individuals was the way to prevent violence – albeit often in the context of disarming racial minorities and other groups seen as subversive by lawmakers at the time.

Holding § 922(g)(1) unconstitutional as applied to felony drug traffickers would effectively strip Congress of the ability to protect the public from a known danger. As the Supreme Court has recognized, "drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993). Our modern-day lawmakers recognize that drug traffickers are dangerous and disruptive to society, such that they should be permanently barred from possessing firearms. *See also United States v. Alaniz*, 69 F.4th 1124, 1130 (9th Cir. 2023) (noting "the increased danger of violence when drug traffickers possess weapons" (quoting *U.S. Sentencing Guidelines Manual* § 2D1.1(b)(1) cmt. n. 11(A))); *United States v. Goins*, No. 522CR00091GFVTMAS1, 2022 WL 17836677, at *13 (E.D. Ky. Dec. 21, 2022) ("Serious drug offenses, like distribution or possession with intent to distribute, are inherently violent offenses that justify disarming those who commit them" (citing *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011))).

## VI.    SECTION 922(G)(1) IS FACIALLY CONSTITUTIONAL

The Court next turns to Mr. Rodriguez's contention that 18 U.S.C. § 922(g)(1) is facially unconstitutional because the statute is unconstitutionally vague and violates the Commerce Clause.[4] Each of these arguments is without merit. A criminal statute is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited" or "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). To be constitutional, "criminal statutes need only give 'fair

---

[4] As previously noted, this Court need not address the Commerce Clause argument, which is foreclosed by precedent and presented by the Government only to preserve the issue on appeal.

warning' that certain conduct is prohibited." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992).

Mr. Rodriguez cannot show that § 922(g)(1) is unconstitutional as applied to his case, let alone in all circumstances. The felon disarmament statute is clear on its face. It provides explicit notice prohibiting the possession of a firearm by any person who has previously been convicted of a crime punishable by more than a year in prison (or of certain misdemeanors as specifically defined). The text of the statute gives unambiguous notice to all people who fall within this category. However, the fact that "the Second Amendment might then constitutionally preclude punishment in certain instances should not lead us to conclude otherwise." *United States of America v. Kalief Ladson*, No. 23-161-1, 2023 WL 6810095, at *5 (E.D. Pa. Oct. 16, 2023).[5] In *Range*, the appellant raised only an "as-applied" challenge to § 922(g)(1), and the Third Circuit had no occasion to consider whether the statute is facially unconstitutional. *Range*, 69 F.4th at 100.

## VII.  CONCLUSION

The Supreme Court has regularly made clear that the Second Amendment is not a "regulatory straightjacket." *Bruen*, 597 U.S. at 30. The government needs to be able to respond to the intolerably high incidence of gun violence our Nation is facing—an issue the founding generation simply did not have to deal with. Mr. Rodriguez, who has repeatedly been convicted of violating gun laws and who has a felony drug trafficking conviction in connection with his possession of an illegal gun, is decidedly not like the appellant in *Range*. Unlike the facts presented in *Range*, the historical record supports the disarmament of Mr. Rodriguez and people with

---

[5] *See also United States v. Ames*, 2023 WL 5538073, at *3 (E.D. Pa. Aug. 28, 2023); *States v. Johnson*, 2023 WL 6321767, at *3 (E.D. Pa. Sept. 27, 2023); *United States v. Blackshear,* 2023 WL 5985284, at *3 (E.D. Pa. Sept. 14, 2023); *United States v. Green*, 2023 WL 6164407, at *2 (E.D. Pa. Sept. 21, 2023).

convictions like his. For all the aforementioned reasons, the Court concludes that the indictment, and the prohibition of drug traffickers and other dangerous felons from possessing firearms, does not violate Mr. Rodriguez's Second Amendment rights.

BY THE COURT:

_____
HON. MIA R. PEREZ